**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| INTAKE BREATHING TECHNOLOGY, LLC,<br><br>    Plaintiff,<br>v.<br><br>STAY LIMITLESS LLC D/B/A/ HISTRIPS,<br><br>    Defendant. | Case No. _____<br><br>JURY TRIAL DEMANDED |

## COMPLAINT AND DEMAND FOR JURY TRIAL

1.    Plaintiff Intake Breathing Technology, LLC ("Intake" or "Plaintiff"), by and through its undersigned counsel, brings this action for patent infringement under 35 U.S.C. § 271, trade dress infringement, and copyright infringement against Stay Limitless LLC d/b/a HiStrips ("Defendant" or "HiStrips"), and alleges as follows:

## NATURE OF THE ACTION

2.    This is a civil action for (i) patent infringement arising under the Patent Laws of the United States of America, 35 U.S.C. §§ 101 *et seq.*, (ii) common law trade dress infringement, and (iii) copyright infringement under 17 U.S.C. § 501. By this action, Plaintiff seeks to prevent Defendant from infringing Plaintiff's intellectual property rights, causing confusion in the marketplace, and unfairly benefiting from Plaintiff's reputation and goodwill.

3.    Plaintiff seeks (i) monetary damages and equitable relief in the form of an injunction both preliminarily and permanently enjoining HiStrips from infringing Intake's U.S. Patent Nos. 10,675,174; 10,556,095; and 9,510,969 (collectively, the "Asserted Patents") and damages, expenses, and attorneys' fees arising from Defendant's willful infringement of the Asserted Patents; (ii) monetary damages and equitable relief in the form of an injunction both

preliminarily and permanently enjoining HiStrips from using Intake's common law trade dress in connection with the manufacture, distribution, advertising, promotion, offering for sale, and/or sale of HiStrips' goods; and (iii) monetary damages, expenses, and attorneys' fees arising from the willful infringement by Defendant, of Plaintiff's registered copyrights on valuable photographic images, and to obtain injunctive relief against Defendant to cease and desist its infringement and to prevent it from any further unlawful copying and infringement of Intake's copyrights, including Copyright Registration Number VAu 1-542-204.

**JURISDICTION AND VENUE**

4.      This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a). This action arises under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq*., and the copyright laws of the United States, 17 U.S.C. §§ 101 *et seq*.

5.      The Court has supplemental jurisdiction over Plaintiff's common law trade dress infringement claim pursuant to 28 U.S.C. § 1367(a).

6.      This Court has personal jurisdiction over Defendant because, among other reasons and upon information and belief, Defendant is incorporated in Delaware, and therefore is domiciled in this District, and has committed acts of infringement in this District, including at least through providing, advertising, promoting, offering to sell, using, making, selling, and/or importing its infringing "HiStrips Magnetic Nasal Strip" product and "HiStrips Nasal Tabs" (the "Accused Products") in or into this District. Upon information and belief, Defendant conducts substantial, systemic, and continuous business activities within this District, has purposefully availed itself of the privilege of doing business in the State of Delaware, and has purposefully directed its infringing activities at the State of Delaware.

7.     Venue is also proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(b) because Defendant is incorporated in this District, and is therefore domiciled in Delaware, and has committed acts of infringement in this District, including the manufacture, use, sale, marketing, offer for sale, and/or importation of infringing products in or into this District and directed to customers within this District.  Upon information and belief, a substantial part of the events giving rise to Plaintiff's copyright and trade dress claims also occurred in this District.

## THE PARTIES

8.     Plaintiff, Intake Breathing Technology, LLC is a California limited liability company with its principal place of business at 614 Santa Barbara Street, Ste. A, Santa Barbara, CA 93101, and is the owner of all rights asserted in this action.

9.     On information and belief, Defendant Stay Limitless LLC d/b/a HiStrips is a Delaware limited liability company with a principal place of business at 225 Cherry St. #14F, New York, NY 10002.

## FACTS AND BACKGROUND

### A.  Plaintiff's Intellectual Property Rights

10.     Plaintiff is the owner of all right, title, and interest in and to U.S. Patent Nos. 10,675,174 (the "'174 Patent"); 10,556,095 (the "'095 Patent"); and 9,510,969 (the "'969 Patent").  True and correct copies of the Asserted Patents are attached as **Exhibits 1–3**.

11.     The '174 Patent issued on June 9, 2020. *See* Ex. 1.

12.     The '095 Patent issued on February 11, 2020. *See* Ex. 2.

13.     The '969 Patent issued on December 6, 2016. *See* Ex. 3.

14.     The Asserted Patents were and are valid and enforceable at all times relevant to this action and are entitled to a presumption of validity under 35. U.S.C. § 282.

3

15.     The '174 Patent is directed to a breathing system adapted to open a nasal passage. A representative picture of Plaintiff's magnetic nasal dilator system embodying the Asserted Patents, including the '174 Patent, is shown below:



16.     The '095 and '969 Patents are directed to nasal adhesives that attach to the user's nose and interact and cooperate with a breathing system apparatus.  A representative picture of Plaintiff's nasal adhesive product embodying the '095 and '969 Patents is shown below:



17.     Plaintiff's patented nasal adhesives are used as part of Plaintiff's innovative nasal dilator system, which includes at least the nasal adhesives, a magnetic band, and an applicator to apply the nasal adhesives.

18.     The patented nasal dilator technology in the Asserted Patents was invented by James D. Castillo, a prolific inventor and motorsports enthusiast who holds multiple patents across various fields. The idea for the nasal dilator system was first conceived during a motorcycle excursion. While wearing goggles, Mr. Castillo experienced discomfort and difficulty breathing due to the pressure on his nose. This experience prompted him to improvise a device that would keep the nostrils open—even under pressure—leading to the initial development of the technology.

19.     The concept resurfaced during a family gathering, where Mr. Castillo realized that this innovation could have a broader application for athletes of all kinds and for people struggling with nasal breathing in everyday life. What started as a solution for a breathing problem in motor-sports evolved into a novel and widely useful device. That idea became a reality through years of design, development, and refinement, ultimately resulting in the patented technology at issue in this case.

20.     Plaintiff's product line embodying the Asserted Patents and displaying Plaintiff's distinctive trade dress under the brand name "Intake®" ("Plaintiff's Products") are sold exclusively under the Intake brand by Plaintiff and its distributor, including through Intake's website (www.intakebreathing.com) and by Plaintiff on e-commerce platforms such as Amazon.com and TikTok.

21.     Plaintiff's Products have been hugely successful and after being used and worn by many professional athletes, including in televised interviews, Plaintiff's Products went viral on social media, including on TikTok.

22.     Plaintiff has developed and owns common law trade dress rights in the distinctive overall commercial image and appearance of its nasal dilatory products, including its magnetic nasal band (marketed as the "Relief Band"), magnetic applicator, and nasal adhesive tabs.

5

23.     Each of these product components and products constitutes a separate and independently protectable trade dress.

24.     The Relief Band trade dress consists of the total image and overall appearance of Intake's magnetic nasal band, including at least the following distinctive, non-functional, ornamental elements: signature color options, specific aesthetic contours, curves, and proportions of the band, the ornamental finish and texture, and the overall visual impression created by the combination of these elements.

25.     The Relief Band trade dress has acquired secondary meaning and distinctiveness through Intake's continuous, exclusive, and substantially widespread use in interstate commerce since at least 2019.

26.     In the minds of consumers, the Relief Band trade dress has come to identify Intake as the single source of origin of products bearing this trade dress. This secondary meaning has been established through: (a) Intake's continuous and exclusive use of the Relief Band trade dress for approximately seven years; (b) Intake's substantial expenditures on advertising and promotional efforts featuring the Relief Band trade dress; (c) Intake's sales of over one million units to consumers throughout the United States; (d) unsolicited media coverage and consumer reviews recognizing the distinctive appearance of the Relief Band; and (e) consumer association of the Relief Band trade dress with Intake as the source of the product.

27.     The Relief Band trade dress is non-functional.

28.     Alternative designs exist that would permit competitors to manufacture rigid, magnetic, nasal bands without copying the distinctive overall appearance of Intake's Relief Band.



29.     The magnetic applicator trade dress consists of the total image and overall appearance of Intake's applicator device, including at least the following distinctive, non-functional, ornamental elements: the specific aesthetic shape, contours, and configuration of the applicator; the color and ornamental surface finish; the coordinated visual design with Intake's travel case; and the overall visual impression created by the combination of these elements.

30.     The magnetic applicator trade dress has acquired secondary meaning and distinctiveness through Intake's continuous, exclusive, and substantially widespread use in interstate commerce since at least 2019.

31.     In the minds of consumers, the magnetic applicator trade dress has come to identify Intake as the single source of origin of products bearing this trade dress. This secondary meaning has been established through: (a) Intake's continuous and exclusive use of the magnetic applicator trade dress for approximately seven years; (b) Intake's substantial expenditures on advertising and promotional efforts featuring the magnetic applicator trade dress; (c) Intake's sales of over one million units to consumers throughout the United States; (d) unsolicited media coverage and consumer reviews recognizing the distinctive appearance of the magnetic applicator; and (e) consumer association of the magnetic applicator trade dress with Intake as the source of the product.

32.     The magnetic applicator trade dress is non-functional.

33. Alternative designs exist that would permit competitors to manufacture applicator devices without copying the distinctive overall appearance of Intake's magnetic applicator.

34. The nasal adhesive tab trade dress consists of the total image and overall appearance of Intake's adhesive tabs, including the following distinctive, non-functional, ornamental elements: the specific aesthetic shape and outline of the tabs; the particular visual appearance created by the surface texture and ornamental color; the overall proportions and dimensions of the tab; and the overall visual impression created by the combination of these elements.

35. The nasal adhesive tab trade dress has acquired secondary meaning and distinctiveness through Intake's continuous, exclusive, and substantially widespread use in interstate commerce since at least 2019. In the minds of consumers, the nasal adhesive tab trade dress has come to identify Intake as the single source of origin of products bearing this trade dress. This secondary meaning has been established through: (a) Intake's continuous and exclusive use of the nasal adhesive tab trade dress for approximately seven years; (b) Intake's substantial expenditures on advertising and promotional efforts featuring the nasal adhesive tab trade dress; (c) Intake's sales of over one million units to consumers throughout the United States; (d) unsolicited media coverage and consumer reviews recognizing the distinctive appearance of the nasal adhesive tabs; and (e) consumer association of the nasal adhesive tab trade dress with Intake as the source of the product.

36. The nasal adhesive tab trade dress is non-functional.

37. Alternative designs exist that would permit competitors to manufacture nasal adhesive tabs without copying the distinctive overall appearance of Intake's nasal adhesive tabs.

38.     In addition to the independently protectable trade dress of each component, Intake also owns common law trade dress rights in the overall presentation of its integrated nasal dilator system, including the distinctive packaging and unified product offering.

39.     The overall product system trade dress has acquired secondary meaning and distinctiveness through Intake's continuous, exclusive, and substantially widespread use in interstate commerce since at least 2019.

40.     In the minds of consumers, the overall product system trade dress has come to identify Intake as the single source of origin of products bearing this trade dress. This secondary meaning has been established through: (a) Intake's continuous and exclusive use of the overall product system trade dress for approximately seven years; (b) Intake's substantial expenditures on advertising and promotional efforts featuring the overall product system trade dress; (c) Intake's sales of over one million units to consumers throughout the United States; (d) unsolicited media coverage and consumer reviews recognizing the distinctive appearance of the overall product system; and (e) consumer association of the overall product system trade dress with Intake as the source of the product.

41.     The overall product system trade dress is non-functional.

42.     Through Intake's extensive marketing efforts, consistent product presentation, and service to over one million customers, consumers encountering products displaying any of the foregoing trade dress immediately identify such products as originating from Intake.

43.     Intake possesses valid and enforceable common law trade dress rights in each of the foregoing trade dress elements.

44.    Plaintiff is also the owner of all rights in the copyrights for its images related to its nasal dilator system, including, but not limited to, images of related product components, packaging, and models demonstrating the use of its products.

45.    On January 2, 2025, the Copyright Reg. No. VAu 1-542-204 (the "'204 Registration"), entitled "Intake Breathing System", was duly and legally issued by the United States Copyright Office. A copy of the '204 Registration is attached as **Exhibit 4**.

46.    The '204 Registration covers a group of Plaintiff's copyrighted photographs of its nasal dilator system, models demonstrating the use of the system, and product packaging associated with the system, including the two registered images below:



47.    Plaintiff's copyrighted images also include photographs with models displaying how to wear and use the nasal dilator system, such as the registered photographs below:



48.     Defendant is not licensed under the Asserted Patents or any other Intake patents and is not authorized to practice the inventions claimed therein.

49.     Defendant is not authorized to use, copy, or mimic Plaintiff's trade dress nor any confusingly similar variation thereof.

50.     Defendant is not authorized to use, reproduce, copy, display, or distribute Plaintiff's copyrighted images of its products, packaging, and models demonstrating the use of the products, nor any derivative thereof.

**B. Defendant's Unlawful Conduct**

51.     Defendant makes, uses, offers for sale, sells, and/or imports into the United States the Accused Products in this action.

52.     The viral success of Plaintiff's Products has resulted in significant and exponential infringement of Plaintiff's Patent. Due to the growing popularity and demand for Plaintiff's highly-effective and high-quality patented nasal dilator technology, opportunistic sellers including Defendant have entered the market with infringing products that attempt to mimic Plaintiff's products and that infringe on its patents. Because of this ongoing infringement, Plaintiff is

currently losing sales in at least the six-figure range on a monthly basis, severely affecting its ability to capitalize on its own innovation and recover its investment in product development and marketing.

53.     Defendant is making, using, selling, advertising, offering for sale, and/or importing into the United States a nasal dilator system, including nasal adhesives, that imitate Plaintiff's genuine products, infringe the Asserted Patents, and infringe on Plaintiff's copyrighted images.  A representative picture of the Accused Products, as advertised on Defendant's website where they are labeled "HiStrips Magnetics Nasal Strips," is shown below, taken from a true and correct webcapture of Defendant's website at https://histrips.com/products/magnetic-nasal-strips, attached as **Exhibit 5**.



54.     Defendant also offers the same Accused Products for sale with the same infringing images on at least one additional site, located at https://shop.app/products/15528048132440/histrips-magnetic-nasal-strip.

55.     The Accused Products meet multiple claims of the Asserted Patents.

56.    Publicly available materials, including the product itself and Defendant's advertising, confirm that the Accused Products practice the claimed elements of the Asserted Patents.

57.    Specifically, Plaintiff's claim charts show that the Accused Products infringe at least claim 1 of the '174 Patent, at least claim 1 of the '095 Patent, and at least claim 1 of the '969 Patent. The representative claim charts are attached as **Exhibits 6–8**.

58.    The unauthorized manufacture, use, sale, offer to sell, and importing into the United States of the Accused Products constitutes infringement under 35 U.S.C. § 271(a) and (c).

59.    Defendant has had notice of the Asserted Patents and that the Accused Products infringe the Asserted Patents since at least the filing of this Complaint.

60.    On information and belief, Defendant is willfully infringing Plaintiff's patents and knowingly seeking to trade off the success of Plaintiff's inventions without Plaintiff's authorization.

61.    Defendant's products also imitate Plaintiff's trade dress in its nasal dilator system and products, creating a likelihood that consumers will be confused into believing Defendant's products are offered by Plaintiff or otherwise associated or affiliated with Plaintiff.

62.    The Accused Products convey the same distinctive overall commercial image and appearance of Plaintiff's nasal dilatory system and each of its component parts including because the Accused Products use the total image and overall appearance of Plaintiff's magnetic nasal band, including at least its signature color options, specific aesthetic contours, curves, and proportions of the band, the ornamental finish and texture, and the overall visual impression created by the combination of those elements.

63.    The Accused Products also convey the same distinctive overall commercial image and appearance of Plaintiff's nasal dilatory system and each of its component parts because the Accused Products use the specific aesthetic shape, contours, and configuration of Plaintiff's applicator, as well as the color and ornamental surface finish, the coordinated visual design with Intake's travel case, and the overall visual impression created by the combination of these elements.

64.    The Accused Products convey the same distinctive overall commercial image and appearance of Plaintiff's nasal dilatory system and each of its component parts including because the Accused Products use images of nasal tabs that use the specific aesthetic shape and outline of Plaintiff's tabs; the particular visual appearance created by the surface texture and ornamental color; the overall proportions and dimensions of the tab; and the overall visual impression created by the combination of these elements.

65.    For example, a comparison of the Accused Products with Plaintiff's genuine products demonstrates Defendant's infringement of Plaintiff's trade dress in the overall commercial image and appearance of Plaintiff's nasal dilatory products and each of its component parts:

| Infringing HiStrips Knockoff | Intake's Authentic Product |
|---|---|
|  | |

| Infringing HiStrips Knockoff | Intake's Authentic Product |
| --- | --- |



66.    On information and belief, in a deliberate effort to benefit from Plaintiff's reputation and trade on the valuable common law rights, goodwill, and consumer trust and recognition established by Intake's trade dress, Defendant has blatantly infringed the same with its ornamental design of the Accused Products as well as by advertising the Accused Products using images of products that use Plaintiff's trade dress.

67.    Defendant also advertises the Accused Products using images that infringe on Plaintiff's copyrighted images, including at least the images below, exactly and/or as infringing derivative works:



68.     Defendant is not authorized to use any of Plaintiff's intellectual property, including Plaintiff's patents, trade dress, or copyrighted images.

**COUNT I**
**PATENT INFRINGEMENT (35 U.S.C. § 271) – THE '174 PATENT**

69.     Plaintiff repeats, re-alleges and incorporates by reference each of the allegations in the preceding paragraphs as if fully set forth herein.

70.     Plaintiff is the exclusive owner of all rights, title, and interest in and to the '174 Patent, titled "Breathing System," duly and legally issued by the United States Patent and Trademark Office on June 9, 2020, including the right to bring this suit for injunctive relief and damages.  A true and correct copy of the '174 Patent is attached hereto as **Exhibit 1**.

71.     The '174 Patent is valid and enforceable.

72.     Defendant makes, uses, offers for sale, sells, and/or imports the Accused Products, including, without limitation, the HiStrips Magnetic Nasal Strip and HiStrips Nasal Tabs, that directly infringe, whether literally or under the doctrine of equivalents, one or more claims of the '174 Patent, including at least representative claim 1.

73.     The Accused Products satisfy all claim limitations of at least one claim of the '095 Patent. A claim chart comparing representative claim 1 of the '095 Patent to a representative sample of the Accused Products is attached as **Exhibit 6**. This showing of infringement is based on publicly available information, and Plaintiff reserves the right to identify additional infringing activities and products, including, for example, on the basis of information obtained during discovery.

74.     Defendant is not licensed or otherwise authorized by Plaintiff to practice the claims of the '174 Patent.

75.     By making, using, offering for sale, selling and/or importing into the United States the Accused Products, Defendant has injured and irreparably harmed Plaintiff and is liable for infringement of the '174 Patent pursuant to 35 U.S.C. § 271(a).

76.    Defendant has actual knowledge of the '174 Patent and that the Accused Products infringe the '174 Patent since at least the filing of this Complaint.

77.    Defendant has profited from its sales of the Accused Products and its infringement of the '174 Patent.

78.    As a direct and proximate cause of Defendant's infringing activities, Plaintiff has suffered and will continue to suffer substantial damages in an amount to be proven at trial. Plaintiff is entitled monetary judgment pursuant to 35 U.S.C. §§ 154(d) and 284 in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty, together with interest and costs as fixed by the Court, and Plaintiff will continue to suffer damages in the future unless Defendant's infringing activities are immediately enjoined.

79.    Defendant's manufacture, use, sale, offer for sale, and/or importation into the United States of the Accused Products since at least the filing of this Complaint constitutes willful infringement entitling Plaintiff to treble damages under 35 U.S.C. § 284.

80.    Defendant's infringement of the '174 Patent is exceptional and entitles Plaintiff to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT II
## PATENT INFRINGEMENT (35 U.S.C. § 271) – THE '095 PATENT

81.    Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1–68 as if separately repeated herein.

82.    Plaintiff is the exclusive owner of all rights, title, and interest in and to the '095 Patent, titled "Google Breathing Set," duly and legally issued by the United States Patent and Trademark Office on February 11, 2020, including the right to bring this suit for injunctive relief and damages.  A true and correct copy of the '095 Patent is attached hereto as **Exhibit 2**.

83.    The '095 Patent is valid and enforceable.

18

84.     Defendant makes, uses, offers for sale, sells, and/or imports the Accused Products, including, without limitation, the HiStrips Magnetic Nasal Strip and HiStrips Nasal Tabs, that directly infringes, whether literally or under the doctrine of equivalents, one or more claims of the '095 Patent, including at least representative claim 1.

85.     The Accused Products satisfy all claim limitations of at least one claim of the '095 Patent. A claim chart comparing representative claim 1 of the '095 Patent to a representative sample of the Accused Products is attached as **Exhibit 7**. This showing of infringement is based on publicly available information, and Plaintiff reserves the right to identify additional infringing activities and products, including, for example, on the basis of information obtained during discovery.

86.     Defendant is not licensed or otherwise authorized by Plaintiff to practice the claims of the '095 Patent.

87.     By making, using, offering for sale, selling and/or importing into the United States the Accused Products, Defendant has injured and irreparably harmed Plaintiff and is liable for infringement of the '095 Patent pursuant to 35 U.S.C. § 271.

88.     Defendant has actual knowledge of the '969 Patent and that the Accused Products infringe the '095 Patent since at least the filing of this Complaint.

89.     Defendant has profited from its sales of the Accused Products and its infringement of the '095 Patent.

90.     As a direct and proximate cause of Defendant's infringing activities, Plaintiff has suffered and will continue to suffer substantial damages in an amount to be proven at trial. Plaintiff is entitled monetary judgment pursuant to 35 U.S.C. §§ 154(d) and 284 in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty, together

with interest and costs as fixed by the Court, and Plaintiff will continue to suffer damages in the future unless Defendant's infringing activities are immediately enjoined.

91.     Defendant's manufacture, use, sale, offer for sale, and/or importation into the United States of the Accused Products since at least after the filing of this Complaint constitutes willful infringement entitling Plaintiff to treble damages under 35 U.S.C. § 284.

92.     Defendant's continuing acts of infringement have caused and will continue to cause Plaintiff irreparable harm, for which Plaintiff has no adequate remedy at law, unless Defendant's continuing acts of infringement are enjoined by the Court under 35 U.S.C. § 283. The hardships that an injunction would impose are less than those faced by Plaintiff should an injunction not issue. The public interest would be served by issuance of an injunction.

93.     Defendant's infringement of the '969 Patent is exceptional and entitles Plaintiff to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**COUNT III**
**PATENT INFRINGEMENT (35 U.S.C. § 271) – THE '969 PATENT**

94.     Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1–68 as if separately repeated herein.

95.     Plaintiff is the exclusive owner of all rights, title, and interest in and to the '969 Patent, titled "Nasal Element For A Breathing System," duly and legally issued by the United States Patent and Trademark Office on December 6, 2016, including the right to bring this suit for injunctive relief and damages.  A true and correct copy of the '969 Patent is attached hereto as **Exhibit 3**.

96.     The '969 Patent is valid and enforceable.

97.     Defendant makes, uses, offers for sale, sells, and/or imports the Accused Products, including, without limitation, the HiStrips Magnetic Nasal Strip including HiStrips Nasal Tabs,

that directly infringes, whether literally or under the doctrine of equivalents, one or more claims of the '969 Patent, including at least representative claim 1.

98.    The Accused Products satisfy all claim limitations of at least one claim of the '969 Patent. A claim chart comparing representative claim 1 of the '969 Patent to a representative sample of the Accused Products is attached as **Exhibit 8**. This showing of infringement is based on publicly available information, and Plaintiff reserves the right to identify additional infringing activities and products, including, for example, on the basis of information obtained during discovery.

99.    Defendant is not licensed or otherwise authorized by Plaintiff to practice the claims of the '969 Patent.

100.    By making, using, offering for sale, selling and/or importing into the United States the Accused Products, Defendant has injured and irreparably harmed Plaintiff and is liable for infringement of the '969 Patent pursuant to 35 U.S.C. § 271.

101.    Defendant has actual knowledge of the '969 Patent and that the Accused Products infringe the '969 Patent since at least the filing of this Complaint.

102.    Defendant has profited from its sales of the Accused Products and its infringement of the '969 Patent.

103.    As a direct and proximate cause of Defendant's infringing activities, Plaintiff has suffered and will continue to suffer substantial damages in an amount to be proven at trial. Plaintiff is entitled monetary judgment pursuant to 35 U.S.C. §§ 154(d) and 284 in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty, together with interest and costs as fixed by the Court, and Plaintiff will continue to suffer damages in the future unless Defendant's infringing activities are immediately enjoined.

21

104.    Defendant's manufacture, use, sale, offer for sale, and/or importation into the United States of the Accused Products since at least after the filing of this Complaint constitutes willful infringement entitling Plaintiff to treble damages under 35 U.S.C. § 284.

105.    Defendant's continuing acts of infringement have caused and will continue to cause Plaintiff irreparable harm, for which Plaintiff has no adequate remedy at law, unless Defendant's continuing acts of infringement are enjoined by the Court under 35 U.S.C. § 283. The hardships that an injunction would impose are less than those faced by Plaintiff should an injunction not issue. The public interest would be served by issuance of an injunction.

106.    Defendant's infringement of the '969 Patent is exceptional and entitles Plaintiff to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT IV
## TRADE DRESS INFRINGEMENT (COMMON LAW)

107.    Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1–68 as if separately repeated herein.

108.    Plaintiff owns trade dress rights in its nasal dilatory system and each of its component parts.

109.    Plaintiff's trade dress consists of (1) the total image and overall appearance of Intake's magnetic nasal band, including at least the following distinctive, non-functional, ornamental elements: signature color options, specific aesthetic contours, curves, and proportions of the band, the ornamental finish and texture, and the overall visual impression created by the combination of these elements; (2) the total image and overall appearance of Intake's applicator device, including at least the following distinctive, non-functional, ornamental elements: the specific aesthetic shape, contours, and configuration of the applicator; the color and ornamental surface finish; the coordinated visual design with Intake's travel case; and the overall visual

22

impression created by the combination of these elements; and (3) the total image and overall appearance of Intake's adhesive tabs, including the following distinctive, non-functional, ornamental elements: the specific aesthetic shape and outline of the tabs; the particular visual appearance created by the surface texture and ornamental color; the overall proportions and dimensions of the tab; and the overall visual impression created by the combination of these elements; including each of these sets of features together in Plaintiff's dilatory nasal system as well as individually as its component parts.

110.    Plaintiff's trade dresses are non-functional and do not yield any utilitarian advantage.

111.    Numerous alternative designs are available that would permit competitors to manufacture and sell non-infringing nasal dilation systems, nasal dilator products, applicators, and adhesive tabs without copying Intake's distinctive trade dress. For example, competitors could employ different aesthetic shapes, outlines, contours, curves, configurations, proportions, colors, ornamental surface finishes, ornamental textures, and visual designs that differ from Intake's unique, signature ornamental designs. The availability of these alternative designs demonstrates that Intake's trade dress elements are not competitively necessary and that competitors could effectively compete in the nasal dilator market without imitating Intake's distinctive product appearance.

112.    Plaintiff's trade dresses have secondary meaning; and Plaintiff is the originator of the unique design for its nasal dilator system and its component parts.

113.    Plaintiff has been advertising and selling its patented nasal dilator system since at least 2019 as a unique and original creation.

114.    Defendant's public display, advertising, promoting, offering for sale, and sale of the Accused Products is likely to cause confusion in the marketplace as to the source of the product.

115.    Plaintiff's trade dress is strong, unique, and has secondary meaning. Defendant's Accused Products is substantially similar to Plaintiff's trade dress in terms of overall image and appearance—the designs, shape, and overall visual impression are identical.

116.    Specifically, the Accused Products convey the same distinctive overall commercial image and appearance of Plaintiff's nasal dilatory system and each of its component parts at least because Defendant's nasal strips use the total image and overall appearance of Plaintiff's magnetic nasal band, including at least its signature color options, specific aesthetic contours, curves, and proportions of the band, the ornamental finish and texture, and the overall visual impression created by the combination of those elements.

117.    The Accused Products convey the same distinctive overall commercial image and appearance of Plaintiff's nasal dilatory system and each of its component parts at least because Defendant's applicator uses the specific aesthetic shape, contours, and configuration of Plaintiff's applicator, as well as the color and ornamental surface finish, the coordinated visual design with Intake's travel case, and the overall visual impression created by the combination of these elements.

118.    The Accused Products convey the same distinctive overall commercial image and appearance of Plaintiff's nasal dilatory system and each of its component parts at least because Defendant's advertisements use images of nasal tabs that use the specific aesthetic shape and outline of Plaintiff's tabs; the particular visual appearance created by the surface texture and ornamental color; the overall proportions and dimensions of the tab; and the overall visual impression created by the combination of these elements.

24

119.    The Accused Products and Plaintiff's Products are both nasal dilator systems which have been presented to customers in the same channels of trade, namely, via e-commerce. On information and belief, the goods travel in the same marketing channels, including on social media.

120.    Defendant's advertising, promoting, offering for sale, and sale of the Accused Products infringes upon Intake's trade dress in violation of New York common law.

121.    As a direct and proximate result of Defendant's trade dress infringement, Defendant has caused, is causing, and unless immediately enjoined by this Court, will continue to cause immediate and irreparable harm to Intake, for which there is no adequate remedy at law, and for which Intake is entitled to injunctive relief.

122.    As a direct and proximate result of Defendant's infringement of Intake's trade dress, Intake has been damaged in an amount to be proven at trial and is entitled to collect damages from Defendant.

## COUNT V
## COPYRIGHT INFRINGEMENT (17 U.S.C. § 501)

123.    Plaintiff repeats, realleges and incorporates by reference the allegations contain in paragraphs 1–68 as if separately repeated herein.

124.    Intake is the sole owner of its registered copyrights covering images of Intake's nasal dilator system, its packaging, and models demonstrating how to wear and use the system, including but not limited to the photographs registered in the '204 Registration.

125.    By Defendant's unauthorized copying, display, reproduction, distribution, modification, and use of the copyrighted images to solicit sales and promote the business and reputation of HiStrips, Defendant has willfully infringed Plaintiff's copyright registration by copying, reproducing, creating derivative works of, displaying, and/or distributing Plaintiff's copyrighted works, all without Plaintiff's permission or authorization.

126.    Defendant knew or should have known of Plaintiff's rights in the copyrighted images since Defendant's first infringing conduct and has willfully and intentionally infringed Intake's exclusive rights in the copyrighted images under 17 U.S.C. § 106.

127.    As a result of their wrongful conduct, Defendant is liable to Plaintiff for copyright infringement under 17 U.S.C. § 501.

128.    As a direct and proximate result of the copyright infringement detailed herein, Plaintiff has incurred and continues to incur damages in an amount unknown at present and to be determined at trial. Plaintiff is also entitled to any profits of Defendant attributable to the infringement and not taken into account in computing actual damages.

129.    In the alternative and at its election, Plaintiff is entitled to seek statutory damages for Defendant's willful acts of infringement in an amount of up to $150,000 per infringement.

130.    Plaintiff Intake has suffered and continues to suffer irreparable injury from Defendant's conduct, and Plaintiff has no adequate remedy at law to protect its rights in its copyrighted images and to prevent Defendant from continuing its infringement and continuing the resulting injury to Plaintiff.

131.    As a direct and proximate result of the copyright infringement detailed herein, Plaintiff is entitled to preliminary and permanent injunctive relief enjoining and restraining Defendant from infringing its copyrighted images.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in its favor and against Defendant on the claims set forth above and respectfully requests that this Court:

A.    Enter judgment against Defendant finding that Defendant (i) has directly infringed, literally or under the doctrine of equivalents, one or more claims of the Asserted Patents, (ii) has

infringed Plaintiff's trade dress rights in violation of common law trade dress rights, and (iii) has violated Plaintiff's copyrights through its unauthorized use of Plaintiff's copyrighted images;

B.     Enter judgment against Defendant finding that Defendant has willfully infringed one or more claims of the Asserted Patents, Plaintiff's common law trade dress rights, and Plaintiff's copyrights;

C.     Temporarily, preliminarily, and permanently enjoin Defendant, its affiliates, officers, agents, employees, assigns, representatives, and all persons acting for, with, by, through, under, or in active concert with Defendant:

   a.   from making, using, offering for sale, selling and/or importing into the United States for subsequent sale or use any products that infringe upon the Asserted Patents, including the Accused Products;

   b.   from any further acts of trade dress infringement, including selling or advertising the Accused Products; and

   c.   from any further acts of copyright infringement;

D.     Award Plaintiff all available and legally permissible damages and relief adequate to compensate Plaintiff for Defendant's patent infringement that occurred pursuant to 35 U.S.C. § 284 to the full extent permitted, an award of Plaintiff's profits from its patent infringement pursuant to 35 U.S.C. § 289, together with prejudgment interest and costs and reasonable attorneys' fees, pursuant to 35 U.S.C. §§ 284 and 285 and all other applicable statutes and rules in common law as may apply;

E.     Award Plaintiff its actual damages resulting from Defendant's trade dress infringement;

F.       Award Plaintiff any profits that Defendant derived from its patent infringement and trade dress infringement;

G.       Award Plaintiff statutory damages in the amount of $150,000 per infringing work for Defendant's copyright infringement in an amount to be determined at trial, to be increased to the maximum permitted by law, for Defendant's acts of willful infringement;

H.       Award Plaintiff its actual damages, direct and indirect, for Defendant's copyright infringement in an amount to be determined at trial, to be increased to the maximum permitted by law, for Defendant's acts of willful infringement;

I.       Award Plaintiff supplemental damages or profits for any prejudgment interest and post-judgment interest, continuing post-verdict infringement up until entry of the final judgment, with an accounting as needed;

J.       Declare Defendant's patent infringement willful and order an enhancement of damages up to three times during the period of willful infringement;

K.       Declare this to be an exceptional case under 35 U.S.C. § 285 and award Plaintiff its reasonable attorneys' fees, costs, and expenses incurred in connection with this action under 35 U.S.C. § 285 and all other applicable statutes and rules in common law as may apply;

L.       Award Plaintiff its costs, including attorneys' fees, and an assessment of interest, for Defendant's copyright infringement;

M.       Award Plaintiff its costs and expenses incurred in bringing and prosecuting this action pursuant to 35 U.S.C. § 284, Rule 54(d) of the Federal Rules of Civil Procedure, and all other applicable statutes and rules in the common law as may apply; and

N.       Award Plaintiff any and all other relief that this Court deems just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b) and D. Del. LR 38.1, Plaintiff hereby demands a trial by jury on all issues so triable by a jury as of right in this action.

Dated: February 10, 2026

OF COUNSEL:

Dawn M. David (*pro hac vice forthcoming*)
QUARLES & BRADY LLP
411 E Wisconsin Ave., Suite 2400
Milwaukee, WI 53202
(414) 277-5000
dawn.david@quarles.com

YOUNG CONAWAY STARGATT &
TAYLOR LLP

Anne Shea Gaza (No. 4093)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com

*Attorneys for Plaintiff*
*Intake Breathing Technology, LLC*