# EXHIBIT 4

| | |
|---|---|
| **From:** | Sam Posthuma |
| **To:** | David, Dawn M. |
| **Cc:** | agaza@ycst.com; Shirreff, Elizabeth M. |
| **Subject:** | RE: Intake Breathing Technology LLC v. Stay Limitless LLC — Case No. 1:26-cv-00152-JLH — Settlement Discussion [QBLLP-ACTIVE.FID60443328] |
| **Date:** | Thursday, February 26, 2026 1:23:56 AM |

Dear Ms. David,

Thank you for your response.

Regarding the shop.app listings: we were genuinely unaware that our products remained available through that channel. Shop.app is a separate platform operated by Shopify that we did not realize was synced to our store. We thought when we took it offline on Shopify it would automatically be taken offline on Shop.app as well. We have now taken those listings offline as well. We can confirm that zero orders were placed through that channel, and we are happy to provide documentation of this if helpful.

"Regarding the advertisements: we have not had any US-targeted ads running since your first correspondence on February 11. Please see this short video walkthrough of our ad account confirming this: https://www.loom.com/share/91ca6bdb5bb64d99909cd82742c4da53 [loom.com],

We also want to clarify the timeline regarding our awareness of Intake's patents. We became aware of this matter only when we first received your correspondence on February 11, 2026 — not January 12 as suggested. I had no prior knowledge of Intake's patents or intellectual property rights before that date, and we acted promptly upon receiving your letter. We are uncertain what event on January 12 is being referenced — we did not receive any correspondence or notice from Intake prior to February 11, 2026.

We understand your frustration and we are not trying to delay or evade. We are a very small operation run by people who are not based in the US, are not familiar with the US patent or legal system, and genuinely did not understand the full scope of what needed to be taken down and where.

To help us ensure full compliance, we would respectfully request that you provide a list of any specific platforms, channels, or countries where you believe our products or advertising remain visible, so that we can address each one immediately. We do not have legal counsel to identify these ourselves and you keep mentioning ‘other regions in the world’, instead of surprising us with another legal letter in that country, you can just mention them now and we take it all offline.

We remain committed to resolving this matter in good faith and as quickly as possible. Our settlement offer stands, and we are open to discussing what a full resolution would look like from your client's perspective.

Respectfully,

Sam Posthuma
CEO, Stay Limitless LLC d/b/a HiStrips
Email: sam@future-labs.co [future-labs.co]

On 25 Feb 2026 at 19:48 +0100, David, Dawn M. <dawn.david@quarles.com>, wrote:

> Sam,
>
> Intake Breathing is open to discussing a meaningful monetary settlement, along with our other demands, in lieu of litigation. $750 is not that. It's five one-thousandths of the statutory damages from wrongfully taking just one of Intake's copyrighted images, of which you took many. And does not come close to covering the damages Intake has incurred as a result of your patent and trade dress infringement, among the other claims in our complaint and letter.
>
> Also, contrary to your assertions, HiStrips is still actively advertising and selling in the U.S. Examples of advertisements in the U.S. from today are shown below, and ordering is still possible in the U.S. And to your other question, yes, we also have rights throughout the world. You've been aware of Intake's patents since at least January 12, and likely before. And, as we've already explained, you've been aware that you were willfully infringing Intake's trade dress rights and their copyrights by taking their product design and images since that conduct began.
>
> <image001.png><image002.png>
>
> Moreover, the infringing "magnetic tabs" included in the magnetic nasal strips kit are clearly still available for purchase in the U.S. on at least two of your sites: https://shop.app/products/15594382164312/magnetic-tabs?fromShop=true [shop.app], https://shop.app/products/15594382164312/magnetic-tabs?fromShop=true [shop.app]. As set forth in our Complaint and demonstrated in the'095 and '969 Claim Charts, these products, like the tabs in the magnetic nasal strip kit, plainly and willfully infringe Intake's patents, about which you are well aware.
>
> It is therefore demonstrably false that HiStrips has ceased its infringing conduct. We continue to demand, as set forth in our letter, that you immediately identify your manufacturer for these infringing products, along with the other demands stated in our letter. Otherwise, we will continue to actively pursue litigation to obtain the court's help.
>
> Regards,
>
> Dawn

<image004.png>

**Dawn M. David | Partner**
dawn.david@quarles.com | D. 414-277-5342
Quarles & Brady LLP
411 East Wisconsin Avenue, Suite 2400, Milwaukee, WI 53202-4428
Bio | quarles.com | LinkedIn
Assistant: Carly Saugstad, 414-277-5302

---

**From:** Sam Posthuma <sam@future-labs.co>
**Sent:** Tuesday, February 24, 2026 3:36 AM
**To:** agaza@ycst.com; David, Dawn M. <dawn.david@quarles.com>
**Subject:** Re: Intake Breathing Technology LLC v. Stay Limitless LLC — Case No. 1:26-cv-00152-JLH — Settlement Discussion

Dear Ms. Gaza and Ms. David,

I am writing as CEO and pro se representative of Stay Limitless LLC d/b/a HiStrips in the above-referenced matter. I am reaching out in good faith to explore whether this dispute can be resolved without further litigation.

I want to be transparent about our situation. HiStrips has been operating as a bootstrapped passion project in the sports and wellness space. We have no outside funding, have not achieved profitability, and have no legal resources. As non-US natives, we had no prior knowledge of Intake's patents and no understanding of the US patent system — we were not advised on this by anyone, and we simply did not know to look. We have no desire to continue any activity that infringes on Intake's legitimate intellectual property rights.

Upon receiving your cease and desist correspondence, I took the following immediate steps:

- Blocked all U.S. customers from purchasing our products, within hours of receiving your notice
- Ceased all U.S.-targeted advertising and promotion within the hour of receiving your correspondence
- Reviewed and began removing any product imagery that could be at issue

We have acted in good faith throughout all of our communications.

In the interest of resolving this matter fully and finally, we are prepared to offer the following:

1. A binding written agreement to permanently cease all sales, advertising, and promotion of our products in the United States
2. A sworn declaration confirming no U.S. inventory exists and no future U.S. sales will occur
3. Contact information for our Chinese manufacturer, which may be of independent value to Intake in addressing the broader market of infringing products
4. A monetary payment of $750 USD
5. Full financial transparency, including PnL statements, sales figures, and bank statements, to verify our situation

I recognize this offer is far below what Intake may be seeking. However, I would ask you to weigh it against the practical reality: Stay Limitless LLC has no meaningful assets, no revenue, and no ability to satisfy a judgment of any significant size. Protracted litigation would cost both parties far more than any realistic recovery from us.

I have prepared a pro se Answer and intend to file it with the court to preserve our rights, but my strong preference is to resolve this through a reasonable settlement agreement rather than litigation.

I am available to speak by phone or video at your earliest convenience.

Respectfully,

Sam Posthuma
CEO, Stay Limitless LLC d/b/a HiStrips
Email: sam@future-labs.co [future-labs.co]
Stay Limitless LLC
228 Park Ave S PMB 43559
New York, New York 10003-1502 US